THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| PISSED AWAY N6VC, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. 2:11-cv-04278-NKL |
| | ) |
| WILLIAM E. STRICKER, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

**ORDER**

Pending before the Court is Defendant William Stricker's motion to dismiss

Plaintiff Pissed Away's claims arising out of a contract for Pissed Away to buy an

airplane from Stricker [Doc. # 13]. For the following reasons, the Court GRANTS the

motion and dismisses the case.

**I.      Background**

Pissed Away is a limited liability company organized under Washington law and

registered to do business in California. Stricker is a citizen of Missouri. In October 2010,

the parties began negotiating the sale of Stricker's 1945 Grumman TBM-3E Avenger

Aircraft to Pissed Away. As a part of those negotiations, Stricker represented to Pissed

Away that the aircraft was priced above market, at $680,000, because it had undergone a

complete ground-up restoration, and that Stricker had spent more than $1.3 million in

restoring the aircraft.  Stricker  represented that every item in the aircraft was either new or overhauled.

On October 15, 2010, the parties entered into a written contract for Stricker to sell the airplane to Pissed Away.  The relevant terms of that contract are as follows:

3.1 Inspection.  Seller agrees to make the Aircraft...available to Buyer to enable the Buyer to perform an inspection of the Aircraft (the *"Inspection"*).  Within forty-eight (48) hours of the completion of the Inspection, Buyer shall, in its sole discretion, either accept or reject the Aircraft.  If Buyer rejects the Aircraft, the Escrow Agent shall promptly refund the Deposit to Buyer.  If the Buyer accepts the airplane, Seller agrees to give the Aircraft a fresh annual inspection, prepare the aircraft for departure, clean the Aircraft, start the annual, swing the gear, swing the wings, pro-oil, oil and de-oil and conduct other repairs as necessary to fix broken non-functional equipment and to ensure flight worthiness. [Doc. # 1-2 at 1].

4.3 Disclaimer.  Other than as expressly set forth in Section 4.1 above [dealing with warranties of title] and in the Warranty Bill of Sale, the Aircraft is sold to Buyer on an "AS IS AND WHERE IS" BASIS. EXCEPT AS SET FORTH IN THIS AGREEMENT, SELLER MAKES NO REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION ANY IMPLIED WARRANTY OF AIRWORTHINESS... [Doc. # 1-2 at 2] (emphasis in original).[1]

8.3 Choice of Law.  This Agreement shall be construed in accordance with, and governed by, the laws of the State of Washington without regard to conflicts of law principles. [Doc. # 1-2 at 4].

8.7 Entire Agreement.  Buyer and Seller warrant that the terms and conditions of this Agreement, including all exhibits hereto, constitute the entire agreement between the parties. [Doc. # 1-2 at 4].

---

[1]Neither party has argued that the terms "flight worthiness" and "airworthiness" have different meaning in the parties' agreement.  The Court thus assumes for purposes of this motion that the terms are interchangeable.

The contract also contains handwritten modifications, accompanied by the following handwritten statement: "Revised 10/15/2010. Supersedes any prior agreement." [Doc. # 1-2 at 1].

Charles Smith accepted the aircraft as "attorney-in-fact" for Pissed Away. [Doc. # 14-1 at 1]. Mr. Smith signed an "Aircraft Delivery Receipt," that states: "The Aircraft was received...and was determined by the undersigned to be in the condition required for Closing as defined in and pursuant to the Agreement." [Doc. # 14-1 at 1].[2]

Upon delivery of the aircraft to Pissed Away, the delivery pilot complained of significant structural, mechanical, and electrical problems with the aircraft. There were signs that the aircraft had not undergone a proper annual inspection. It also appeared that parts of the aircraft were neither new nor had been overhauled. Pissed Away brought this lawsuit, claiming breach of contract, fraud in the inducement, and negligent misrepresentation.

## II.     Discussion

### A.     Governing Law

The parties agree that Washington law controls their contract dispute, pursuant to a valid choice-of-forum provision in the parties' contract. *See Kagan v. Master Home Prods. Ltd.*, 193 S.W.3d 401, 407 (Mo. Ct. App. 2006). Stricker argues that Pissed Away's claims for fraud in the inducement and negligent misrepresentation are governed by Missouri law

---

[2]Because this document is incorporated into the parties' contract, [Doc. # 1-2 at 1], which was attached to the Complaint, the Court may consider this document without converting the motion into one for summary judgment. FED.R.CIV.P. 10(c); *See also Enervations, Inc. v. Minnesota Mining and Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004).

because they are not covered by the terms of the contract and because Missouri has the most significant relationship to the parties' interactions. Pissed Away argues that the disclaimers in the parties' contract cause Washington law to control all three of its claims.

"Generally speaking, whether a forum selection clause that by its terms applies to contract actions also reaches non-contract claims depends on whether resolution of the claims relates to interpretation of the contract." *Major v. McCallister*, 302 S.W.3d 227, 231 (Mo. Ct. App. 2009) (internal quotes omitted). The court in *Major* cited a Ninth Circuit case for the foregoing proposition, and described that case as holding that a "forum selection clause reaches tort claims that cannot be adjudicated without analyzing whether the parties were in compliance with the contract." *Id.* at 232 (internal quotes omitted). The *Major* court also noted that it would apply a choice-of-law clause "where the statements giving rise to a tort claim are integrally linked to the contractual relation between the parties," but not where "the litigation did not arise due to the parties' agreement, but because [one party] allegedly interfered with [another party's] business dealings with a third party." *Id*. at 231.

The Court concludes that Missouri courts would apply Washington law to all of Pissed Away's claims. All three of Pissed Away's claims arise from its purchase of an aircraft. The parties attempted to memorialize in a contract all of their rights regarding that purchase. The Court necessarily must construe that contract according to contract law in order to determine whether that contract definitively determines the parties' rights and whether it precludes Pissed Away's claims, as Stricker claims it does. Because the resolution of all three claims "relates to interpretation of the contract," the Court enforces the choice-of-

4

forum provision and applies Washington law to all three claims. Regardless, Stricker is not prejudiced by this conclusion, because Stricker has represented to the Court that "Washington and Missouri law are in accord on the elements of these causes of action." [Doc. # 14 at 8].

Neither party has addressed whether the Uniform Commercial Code ("UCC") applies to this transaction, and neither party cites the UCC in its briefing. Washington adopted the UCC in 1965, although it has made certain statutory variations to it. *See Kimberly Quality Care v. Eastern Star Nursing Home*, 813 P.2d 163, 165 n.2 (Wash. Ct. App. 1991). The UCC applies to "transactions in goods," and appears to govern the parties' contract to sell an airplane. RCW 62A.2-102. To the extent the parties' contract is clear, the Court need not consult the UCC because parties can generally vary the terms of the UCC by agreement. RCW 62A.1-102. To the extent the Court fills gaps in the parties' agreement, the Court will cite to both Washington case law and analogous portions of Washington's version of the UCC.

## B. Whether Stricker Has Waived His Right to File This Motion

Pissed Away argues that Stricker waived all of the arguments made in this motion to dismiss by not raising these same arguments in his motion to dismiss filed in an earlier case between the parties filed in the Southern District of California. Although Pissed Away is correct that Federal Rule of Civil Procedure 12(g) requires that all Rule 12(b)(6) motions be brought at one time or waived, Pissed Away provides no authority suggesting that this requirement spans multiple lawsuits. A brief look at Rule 12 demonstrates that the Rule was

5

only intended to set out the timing of motions in relation to the single set of pleadings and the single trial in a given case.

Further, none of the cases cited by Pissed Away hold that a motion is precluded by a different motion filed in an earlier case. Rather, both cases cited by Pissed Away feature straightforward applications of the Rule to two motions filed in the same case. *See Broomfield v. Doolittle*, 2 F.R.D. 517, 519 (S.D.N.Y. 1942); *Thomas D. Wilson Consulting, Inc. v. Keely & Sons, Inc.*, 2006 U.S. Dist. LEXIS 73691 at * 1-2 (E.D. Mo. 2006). The Court thus finds Pissed Away's interpretation unpersuasive, and holds that Stricker's claims are not barred by Rule 12(g).

### C. Pissed Away's Contract Claim

"Interpretation of an unambiguous contract is a question of law." *Mayer v. Pierce Cty. Medical Bureau, Inc.*, 909 P.2d 1323, 1326 (Wash. Ct. App. 1995). "In construing a written contract, the basic principles require that (1) the intent of the parties controls; (2) the court ascertains the intent from reading the contract as a whole; and (3) a court will not read an ambiguity into a contract that is otherwise clear and unambiguous." *Id.* Pissed Away claims that Stricker breached a duty in the parties' contract that if Pissed Away "accepts the airplane, [Stricker] agrees to...conduct other repairs as necessary to fix broken non-functional equipment and to ensure flight worthiness." [Doc. # 1-2 at 1]. Pissed Away does not dispute that the parties' contract states that the airplane was sold "as is" and disclaims all warranties except as set forth in the agreement. Pissed Away's only attempt to reconcile these two provisions is to argue that Stricker "failed to perform in delivering the Aircraft in the 'as is'

6

condition that the parties contracted for." [Doc. # 18 at 10]. This argument is not logical. Rather, it is well understood, in law and in common usage, that "[t]he term 'as is' implies that the property is taken with whatever faults it may possess and that the seller or lessor is released of any obligation to reimburse the purchaser for losses or damages that result from the condition of the property." *Warner v. Design and Build Homes, Inc.*, 114 P.3d 664, 668 (Wash. Ct. App. 2005).

Still, the Court must construe the meaning of these terms to determine if Stricker breached the contract. The agreement states that "Other than as expressly set forth in Section 4.1 above and in the Warranty Bill of Sale the Aircraft is sold on an 'AS IS AND WHERE IS' BASIS." [Doc. # 1-2] (emphasis in original). The agreement disclaims all warranties, including any implied warranty of airworthiness on the part of Stricker, but does so "except as set forth in this agreement." [Doc. # 1-2 at 2]. Stricker's obligation to "ensure flight worthiness" appears in Section 3.1 of the agreement, and thus, if the contract is read strictly, is subject to the "as is" clause but not subject to the disclaimer of warranty. Further, the agreement allows Pissed Away to inspect the aircraft before accepting it, but Stricker's obligation to "ensure flight worthiness" appears to attach only after Pissed Away does so. Finally, the "Aircraft Delivery Receipt" signed by Pissed Away's agent states that the agent determined the aircraft "to be in the condition required for Closing as defined in and pursuant to the Agreement." [Doc. # 14-1 at 1].

In order for an "as is" clause to negate express or implied warranties, it must be "explicitly negotiated or bargained for" and must set forth with particularity that being

7

disclaimed.  *Olmstead v. Mulder*, 863 P.2d 1355, 1359 (Wash. Ct. App. 1993); *see also* RCW

62A.2-316(3)-(4) (only applying these requirements to goods bought for household use).

The "as is" clause in the parties' contract satisfies the particularity requirement because it

expressly discusses a warranty of airworthiness, which is the subject of the parties' dispute.

The "bargained for" requirement means the clause must be known to Pissed Away and not

hidden away in fine print or boilerplate prepared by Stricker.  *See id*.  Here, Pissed Away is

a company and not an individual, the contract is only five pages long, Pissed Away has not

alleged that Stricker drafted the contract, the parties made modifications by hand to the

contract, and the contract price was $680,000.  All of the facts alleged in the Complaint

suggest that the parties were sophisticated, on equal bargaining ground, and well aware of

the contents of the contract.  Although Pissed Away states in its briefing, when arguing a

different issue, that it "was not on equal footing with Defendant," [Doc. # 18 at 6], this is

insufficient to upset the Court's conclusion because it "tenders naked assertions devoid of

further factual enhancement." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (internal quotes

omitted).  The "bargained for" requirement is thus also satisfied.

  The Court holds that the above-quoted provisions, taken together, foreclose as a

matter of law Pissed Away's claim for breach of contract.  The clear intent of parties in

contracting for inspection and acceptance – with a disclaimer of airworthiness and "as is"

clause – was to avoid claims such as this one.  Pissed Away has not alleged any fact

occurring between its agent's acceptance and Pissed Away's receipt of the aircraft that

changed the aircraft's condition.  Pissed Away has not alleged that the complained-of

8

problems could not be discovered through inspection. Pissed Away has not argued that it could not contract for an opportunity to test-fly the aircraft as part of its inspection. *See Boeing Airplane Co. v. Firemen's Fund Indem. Co.*, 268 P.2d 654, 661 (Wash 1954) (discussing the use of "acceptance flights" to determine whether a repaired aircraft was "airworthy"), *overruled on other grounds by Berg v. Hudesman*, 801 P.2d 222, 228 (Wash. 1990). Rather, Pissed Away appears to simply disagree with its agent's assessment of the suitability of the aircraft. The parties' agreement as a whole, through including a right for Pissed Away to inspect the aircraft and reject it without penalty, and through including an "as is" clause, demonstrates an intent to insulate Stricker from the risk that this would occur.

True, Stricker's agreeing in Section 3.1 of the contract to "ensure flight worthiness," read in isolation, could be read to conflict with this assessment. But "an ambiguity will not be read into a contract where it can reasonably be avoided by reading the contract as a whole." *Grant Cty. Constructors v. E.V. Lane Corp.*, 459 P.2d 947, 954 (Wash. 1969); *see also* RCW 62A.2-316(1) (warranties and limits to warranties should be read together as consistent where reasonable). The above phrase can reasonably be interpreted with the contract as a whole as part of an obligation by Stricker to prepare the newly sold aircraft for a safe delivery flight back to Pissed Away.

The Court's interpretation is supported by the parties' choice not to use the word "warranty" when discussing the obligation in Section 3.1. The word "warranty" has a precise meaning, and tends to carry a temporal component, as is evidenced by the following definition: "A promise that certain facts are truly as they are represented to be and that they

9

will remain so, subject to any specified limitations." BLACK'S LAW DICTIONARY 1586 (6th ed. 1995). If the parties had provided in Section 3.1 that Stricker makes a "warranty of flight worthiness," it would be clear that the parties intended Pissed Away's interpretation of the contract. That is, it would be clear that if Pissed Away discovered upon delivery that the aircraft was not flight worthy, Stricker would have violated its promise that the aircraft was flight worthy and would remain so. It would also be clear in that situation that the parties did not mean to disclaim a warranty of flight worthiness with the language in Section 4.3 that "except as set forth in this agreement, seller makes no representation or warranty."

In Section 3.1 the parties did not use the word "warranty," but instead used the phrase "ensure flight worthiness." The word "ensure" has a less precise definition, and can more easily be read as meaning a one-time assurance, rather than an ongoing obligation, as evidenced by the following definition: "To make certain or sure of." WEBSTER'S II NEW COLLEGE DICTIONARY (1995). Although the word "ensure" may well create a warranty in some situations, it does not do so where, as here, the parties consistently use the word "warranty" elsewhere to refer to ongoing obligations such as warranties of title. [Doc. # 1-2 at 2]; *see* RCW 62A.2-317(a) (technical language displaces general language in resolving a conflict of warranties). Washington courts have relied on the use of different words in different places in a contract to imply different meanings, and in this case that suggests that the phrase "ensure flight worthiness" means that Stricker needed only to make certain that the aircraft was safe for its delivery flight. *See Bellevus Sch. Dist. No. 405 v. Bentley*, 684 P.2d 793, 798 (Wash. Ct. App. 1984). Further, the parties' use of the phrase "ensure," rather

10

than "warranty," in Section 3.1 suggests that the parties did not have the Section 3.1 obligation in mind when they disclaimed all warranties "except as set forth in this agreement." That is, it suggests that the parties meant to exclude only the Section 4.3 warranties, and not the obligation to "ensure flight worthiness," from the contract's general "as is" operation.

The Court's interpretation is also supported by the parties' decision to allow inspection and acceptance *before* Stricker ensured flight worthiness. Pissed Away argues that the agreed-on contract price reflects the agreed-on condition of flight worthiness, and that the latter obligation is set out at Section 3.1. But if this were the case, one would expect the inspection and acceptance to occur *after* Stricker performed his Section 3.1 obligation to ensure flight worthiness, because only then could Pissed Away assess whether the condition of the aircraft fairly matched the contract price. That the contract provides for inspection and acceptance before performance of the Section 3.1 obligation suggests that this is truly an "as is" contract, where Pissed Away's agent decided after inspection that the aircraft's condition at the time of inspection mirrored the agreed-upon contract price, and it only remained for Stricker to perform any necessary touch-ups for a safe delivery flight. Further, as Stricker points out, if the parties had intended for Stricker to warrant the quality of the aircraft, one would not expect them to include an inspection at all. In such a situation, the warranty would protect Pissed Away's right to an airworthy aircraft regardless of whether Pissed Away ever inspected the aircraft.

11

Finally, the Court's interpretation is supported by Stricker's obligation in Section 3.1 to "fix broken non-functional equipment," which suggests that if Pissed Away accepted the aircraft in a condition that is not suitable for flight, Stricker agreed through this term to prepare the aircraft for a delivery flight as a matter of convenience. In fact, every other obligation listed in Section 3.1 appears to be an obligation to take a one-time action, rather than an ongoing guarantee of the condition of the aircraft. Had the condition of the plane been such that the delivery pilot could not complete the delivery flight to Pissed Away, Stricker might have breached his obligation to ensure flight worthiness.[3] But the Court does not read that obligation to disrupt the contract's fundamental "as is" status.

The allegations in the Complaint that its delivery pilot "had significant difficulties with the Aircraft" and that the condition of the aircraft on delivery indicated "that a proper annual inspection had not been preformed" facially support a claim that Stricker breached its Section 3.1 duties. [Doc. # 1 at 3]. But Pissed Away has not alleged any damages from this breach, which Pissed Away admits is required to state a claim for breach of contract under Washington law, citing *Green v. McLaughlin Realty Co.*, 116 P. 641, 642 (Wash. 1911). Rather, Pissed Away's claim for relief on its contract claim merely asks for "the difference between the contract price for the Aircraft and the value of the Aircraft upon receipt, and the costs to repair to [sic] Aircraft to its contracted-for airworthy condition."

---

[3]Neither party has argued the significance of the contract provision placing the risk of loss on Stricker until acceptance. [Doc. # 1-2 at 2]. That provision does not undermine the Court's analysis here, because the application of a risk-of-loss provision varied depending on whether breach has occurred. RCW 62A.2-510.

12

[Doc. # 1 at 8].  This claim for relief is unrelated to the damages that would be caused by the difficulty of the delivery pilot's unprepared flight, including incidental damages of delay, wasted fuel or fees from an unscheduled landing, or damage to the aircraft from flying it in an unprepared condition.  Thus, Pissed Away has not stated a claim for breach of Stricker's Section 3.1 duties, neither as Pissed Away has interpreted them nor as the Court has interpreted them.

For these reasons, the Court need not consider the definition of "flight worthiness" or "airworthiness" under the contract, or whether the condition of the aircraft upon acceptance or delivery met these definitions.  Pissed Away's agent both agreed that the condition of the aircraft satisfied the contract and accepted the aircraft, and Pissed Away's only claimed losses result from its later dissatisfaction with that condition.  Because the parties have entered an "as is" contract that disclaims a warranty of airworthiness, Pissed Away's contract claim fails as a matter of law.

### D.     Pissed Away's Claims for Fraudulent Inducement and Negligent Misrepresentation

Pissed Away claims that Stricker fraudulently induced Pissed Away into buying an aircraft and made a negligent misrepresentation by representing to Pissed Away that the aircraft had undergone a complete, ground-up restoration.  Under Washington law, a plaintiff alleging fraud must "establish[] by clear, cogent and convincing evidence" that the plaintiff had the right to rely on the allegedly fraudulent misrepresentation.  *Stiley v. Block*, 925 P.2d 194, 204 (Wash. 1996) (internal quotes omitted).  Likewise, Washington law requires a plaintiff claiming negligent misrepresentation to "prove by clear, cogent, and convincing

13

evidence that he or she justifiably relied on the information that the defendant negligently supplied." *Lawyers Title Ins. Corp. v. Baik*, 55 P.3d 619, 623 (Wash. 2002). "Where the correct information is reasonably ascertainable by the complaining party, he may not justifiably rely on the other party's statement." *Rainier Nat. Bank v. Clausing*, 661 P.2d 1015, 1019 (Wash. Ct. App. 1983). "Although the question of whether a party justifiably relied is a question of fact, when reasonable minds could reach but one conclusion, questions of fact may be determined as a matter of law." *ESCA Corp. v. KPMG Peat Marwick*, 959 P.2d 651, 656 (Wash. 1998).

The Court finds as a matter of law that the correct information regarding the misrepresentations and fraud alleged by Pissed Away were reasonably ascertainable by Pissed Away. The parties' contract allowed Pissed Away a full inspection of the aircraft, and allowed Pissed Away to reject the aircraft after inspection without penalty. Pissed Away has alleged no facts suggesting that the aircraft defects that it discovered upon delivery could not have been discovered during the inspection – which occurred before Pissed Away accepted the aircraft. Pissed Away has thus failed to state a claim for negligent misrepresentation or fraudulent inducement.

## III.   Conclusion

For the foregoing reasons, it is ORDERED that Defendant William Stricker's motion

14

to dismiss is GRANTED on all of Plaintiff Pissed Away's claims.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated:  February 6, 2012
Jefferson City, Missouri